**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| P.C., <br><br>     *Plaintiff*, <br><br>     v. <br><br> PETER V. DRISCOLL, M.D. et al., <br><br>     *Defendants*. | Civil Action No. 25-739 <br><br> **OPINION** <br><br> March 12, 2026 |

**SEMPER,** District Judge

The current matter before the Court comes upon three motions to dismiss, or in the alternative, compel arbitration, filed by Defendant NYC Medical Practice, P.C. ("NYCMP") d/b/a Goals Aesthetics & Plastic Surgery (ECF 147), Defendant Ella Voskresenskiy *also known as* Ella Voskin[1] (ECF 148), and Defendant My Goals Solutions, Inc., Perkins Medical Care N.J., P.C., Sergey Voskin, M.D., NYCMPA, and Ella Voskin (ECF 149). Plaintiff opposed the motions. (ECF 153; ECF 154; ECF 154.) Defendants filed a consolidated reply brief. (ECF 155.) The Court has decided this motion upon the submission of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' motions are **GRANTED** in part and **DENIED** in part.

---

[1] Defendant Ella Voskresenskiy avers that her name is Ella Voskin, not Ella Voskresenskiy. (ECF 148-2 ¶ 4) ("I legally changed my name a very long time ago.") The Court will refer to this Defendant as Ella Voskin herein.

1

## I.    FACTUAL AND PROCEDURAL BACKGROUND

For purposes of the instant motion, the Court does not retrace this case's full factual and procedural history.  The Honorable Lewis J. Liman's January 15, 2025 Opinion, transferring the case from the Southern District of New York to the District of New Jersey, includes a detailed recounting of the factual background of this matter.  (*See* ECF 107, "January Opinion" or "Op.") To the extent relevant to the instant motion, the Court incorporates the factual and procedural history from the January Opinion herein.

This case arises from Plaintiff's allegations of sexual assault committed by Dr. Peter Driscoll during a scheduled surgery for liposuction of the abdomen and a double Brazilian Butt Lift performed on June 7, 2022 at a Goals Aesthetics and Plastic Surgery[2] medical facility located in Ridgefield, New Jersey.  (ECF 154 at 1; *see* ECF 146, "SAC" ¶ 20.)  Plaintiff alleges that the sexual assault, which occurred while she was anesthetized, was "the direct and tragic result of Defendants' reckless indifference and willful failure to protect their patients, including Plaintiff." (ECF 154 at 1; SAC ¶ 28.)  Despite "a well-documented history of misconduct[3]—including multiple licensing suspensions and prior incidents of misconduct during surgeries (including

---

[2] Plaintiff alleges that Defendants Perkins Medical Care, My Goals Solutions, and NYCMP hold themselves out to the public to be Goals Aesthetics and Plastic Surgery.  (ECF 146 ¶ 13.)

[3] "In August 2015, the State of Texas medical board placed DRISCOLL on probation for unprofessional or dishonorable conduct and for malpractice he committed; one of the stipulations was that DRISCOLL had to be monitored by another physician while with clients to practice medicine; In August 2016, the State of Texas medical board filed a complaint against DRISCOLL for failing to comply with rules related to office-based anesthesia services, in addition to other claims; In April 2017, the State of Texas medical board filed a complaint against DRISCOLL for malpractice because he moved and did not inform patients, in addition to other claims…In March or April of 2017, the State of California medical board placed DRISCOLL on probation for malpractice…In September 2019, the State of California medical board filed an amended accusation and petition for revocation complaint against DRISCOLL for several incidents of malpractice; and On February 7, 2020, the State of California medical board entered an order for the surrender of DRISCOLL's California medical license."  (SAC ¶ 34.)

listening to pornography)—Dr. Driscoll was hired, retained, and left unsupervised by Defendants[.]" (ECF 154 at 1; *see* SAC ¶ 34.)

Plaintiff's Second Amended Complaint states seven causes of action against Defendants, including medical malpractice, intentional infliction of emotional distress, negligent infliction of emotional distress, vicarious liability, negligent hiring, retention, and supervision, and a violation of the Consumer Fraud Act, *see* N.J. Stat. Ann. § 56:8-1 et seq. (SAC ¶¶ 48-105.) Defendants move to dismiss Counts three through seven of the Second Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 149 at 2-13.) Defendants Ella Voskin and NYCMP also move to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. (ECF 148 at 3-11; ECF 147 at 3-11.) Defendants each argue that in the alternative, the Court should compel arbitration arising out of Plaintiff's contract with Defendant NYCMP. (ECF 147 at 12-13; ECF 148 at 12-14; ECF 148 at 15-17.)

## II.   LEGAL STANDARD

### A. 12(b)(2) Motion to Dismiss

The Court must grant a defendant's motion to dismiss under Rule 12(b)(2) if it does not maintain personal jurisdiction over the defendant. *See* Fed. R. Civ. P. 12(b)(2). Once a defendant challenges personal jurisdiction in this manner, the burden of establishing personal jurisdiction shifts to the plaintiff. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007) (citations omitted). A federal court typically must conduct a two-step analysis to ascertain whether personal jurisdiction exists: first, whether the forum state's long arm statute permits jurisdiction and second, whether assertion of personal jurisdiction violates due process. *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998). New Jersey's long arm statute permits the exercise

3

of personal jurisdiction "to the uttermost limits permitted by the United States Constitution," and thus, the typical two-part inquiry may be collapsed into a single step addressing due process requirements. *Mesalic v. Fiberfloat Corp*., 897 F.2d 696, 698 (3d Cir. 2002).

A district court may exercise either general or specific personal jurisdiction over a defendant. *Abel v. Kirbaran*, 267 F. App'x 106, 108 (3d Cir. 2008). General jurisdiction exists where the defendant maintains "continuous and systematic" contacts with the forum "as to render [it] essentially 'at home' in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). For general jurisdiction purposes, a partnership takes on the citizenship of each of its partner members. *Zambelli Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010). To establish that Defendants are subject to specific personal jurisdiction, Plaintiff must show: (1) Defendants "purposefully directed [their] activities at [New Jersey]," (2) Plaintiff's claims "arise out of or relate to at least one of those activities," and (3) "the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (internal quotations and citations omitted).

Under the first prong of this analysis, Plaintiff must establish that Defendants had sufficient minimum contacts with New Jersey. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). A finding of minimum contacts requires the defendant to have "purposefully avail[ed]" itself of the laws and benefits of conducting business in New Jersey. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Plaintiff must establish that Defendants purposefully availed themselves of the forum to a degree "such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980). Parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are

subject to personal jurisdiction in the other state. *Burger King Corp.*, 471 U.S. at 473. A defendant's actions must "create a 'substantial connection' with the forum State" by engaging in "significant activities within a State," or creating "continuing obligations" between itself and forum residents. *Id*. at 475–76 (citations omitted).

### B.  12(b)(6) Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss

the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, 2010 WL 5146765, at *1 (D.N.J. Dec.13, 2010).

### III. ANALYSIS

Defendants' three motions to dismiss contain overlapping arguments regarding personal jurisdiction, Plaintiff's failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) in Counts Three through Seven of the Second Amended Complaint, and that in the alternative, Plaintiff's claims must be submitted to arbitration. The Court will address each of these arguments in turn.

#### A. Personal Jurisdiction

Defendants NYCMP and Ella Voskin argue that this Court lacks general and specific jurisdiction over them and that they must be dismissed from the case. (ECF 147 at 7-11; ECF 148 at 6-11.) Plaintiff maintains that Defendants are judicially estopped from making such arguments, because when Defendants moved to transfer the case from the Southern District of New York to the District of New Jersey, they argued that "this case…belongs in New Jersey" and therefore "the entire matter" should be "tried in New Jersey, where this case should have been brought in the first place." (ECF 72 at 10, 19) (*see* ECF 154 at 4.) Plaintiff also argues that this Court has specific jurisdiction over Defendant Ella Voskin, and general and specific jurisdiction over Defendant NYCMP. (ECF 154 at 5; ECF 153 at 7, 9.)

First, Defendants are not judicially estopped from arguing that this Court lacks personal jurisdiction over them because they had previously argued for transfer of venue from the Southern District of New York to the District of New Jersey. "The basic principle [of judicial estoppel]…is that absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory and then seek an inconsistent advantage by pursuing an incompatible theory." *Ryan*

6

*Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996) (citation omitted). The personal jurisdiction arguments currently before the Court are not irreconcilable with Defendants' prior arguments that the Southern District of New York was not the proper venue for this action. Indeed, dismissal for improper venue and for lack of personal jurisdiction are subject to analysis under different rules. *Compare* Fed. R. Civ. P. 12(b)(2) *with* Fed. R. Civ. P. 12(b)(3). Moreover, Judge Liman explicitly did not make any findings related to personal jurisdiction in the January Opinion when he determined that the Southern District of New York was not the proper venue for this action. (*See* Op. at 8) ("the Court does not address the parties' claims with respect to personal jurisdiction, subject matter jurisdiction, or the legal sufficiency of Plaintiff's claims to relief.")

Defendant Ella Voskin is the wife of Defendant Dr. Sergey Voskin, M.D., who is the sole shareholder of NYCMP and My Goals Solutions, Inc. (ECF 148-2, "E. Voskin Decl." ¶ 3.) Defendant Voskin is a resident of New York, and the Second Amended Complaint alleges that she is "a principal and supervisor for advertising and social media" of My Goals Solutions. (SAC ¶ 8.) Defendant Voskin avers that she "sometimes help[s] around the office of my husband's businesses" but she is "not employed by NYC Medical Practice, P.C. or My Goals Solutions, Inc." and has "no involvement at all with Perkins Medical[.[]" (E. Voskin Decl. ¶ 6.) Indeed, her husband is the sole shareholder of NYCMP and My Goals Solutions, Inc. (*Id.* ¶ 3.) She also avers that she "was not involved in any of the day-to-day operations, nor was I involved with the subject matter of the instant dispute." (*Id.* ¶ 9.)

Though the Second Amended Complaint alleges that Defendant Ella Voskin "transacted, solicited, and conducted business in and from the State of New Jersey including marketing for" My Goals Solutions, and managed or directed day-to-day duties of the Goals Aesthetics and Plastic

7

Surgery medical facility in Ridgefield, where Plaintiff underwent her surgery (SAC ¶¶ 8, 10), the record before this Court does not demonstrate such an involved role.  To support her arguments for personal jurisdiction over Ella Voskin, Plaintiff cites to excerpts from the deposition of her husband, Dr. Sergey Voskin, as proof that employees identified her "as a person of authority for day-to-day operations and compliance issues."  (ECF 154 at 6.)  However, that deposition testimony demonstrates only that Plaintiff's counsel asked if Dr. Voskin was aware that an employee of My Goals Solutions, Nicole, "cited both you and your wife as people that they would get reported to if they did not comply with directives" to which Dr. Voskin responded "Yeah." (*See* ECF 154-2.)  This alone is not enough to establish that Defendant Ella Voskin, who held no official role with nor was employed by My Goals Solutions, Perkins Medical, or NYCMP, purposefully availed herself of the laws and benefits of conducting business in New Jersey, such that she should "reasonably anticipate being haled into court" here. *World–Wide Volkswagen*, 444 U.S. at 297.  Defendant Ella Voskin is therefore dismissed from this action without prejudice.

Defendant NYCMP is a corporate entity organized and authorized to do business under the laws of the State of New York with a principal executive office address of 251 W 135th Street, New York, NY 10030.  (SAC ¶ 5.)  Plaintiff argues that Defendant NYCMP "held themselves out to the public as Goals Aesthetics and Plastic Surgery" and that Dr. Driscoll, who in the course of performing surgery on Plaintiff sexually assaulted her, "was contracted to perform these surgical services by NYCMP."  (ECF 153 at 7) (citing SAC ¶¶ 5-13.)  Plaintiff also argues that NYCMP provided administrative and management services for Defendant Perkins Medical Care, which is based in New Jersey and oversaw Plaintiff's surgery.  (ECF 153 at 7-8.)

Defendant NYCMP argues that it is a dormant corporation formed under the laws of the State of New York and "does not actively conduct any business whatsoever – it exists solely to

service various debts and obligations (and potential receivables) from which it cannot escape." (ECF 147 at 7.) However, Defendant NYCMP's own declaration avers that it "remains active as it has existing liabilities and outstanding debts that prevent a full winddown of the company." (ECF 147-3, 147-3, "NYCMP Decl." ¶ 8.) Defendant NYCMP concedes that Plaintiff underwent an elective surgical procedure at Perkins Medical Care, "which is branded as a 'Goals Aesthetics and Plastic Surgery ®' medical practice in Ridgefield, New Jersey" and that Perkins Medical Care "licenses the Goals Aesthetics and Plastic Surgery® branding from Defendant My Goals Solutions, Inc." (*Id*.) However, Defendant argues that "none of the named Defendants associated with the brand (Defendant My Goals Solutions, Inc., Defendant NYC Medical Practice, P.C., and Defendant Sergey Voskin, M.D.) were involved with Plaintiff's procedure other than Dr. Voskin having reviewed medical records and submitted to confirm eligibility for the surgery." (*Id.*) (citing NYCMP Decl. ¶¶ 7-9.)

NYCMP is listed on the contract that Plaintiff signed for her surgery at the Goals Solution facility. Defendant's own motion to dismiss includes this contract as an exhibit. (*See* ECF 147-4, "Exhibit 1" at 9-13) (listing "NYC Medical Practice, P.C. d/b/a Goals Aesthetics & Plastic Surgery" at the top of each page) ("I authorize NYC Medical Practice, P.C., d/b/a Goals Aesthetics and Plastic Surgery ("Goals") to use and disclose my name, photographic/video images, and/or written testimonials (collectively, "Materials") for marketing purposes.") ("I AUTHORIZE NYC MEDICAL PRACTICE, P.C. TO CHARGE THE CREDIT CARD INDICATED…I AUTHORIZE NYC MEDICAL PRACTICE, P.C. TO COLLECT ANY REQUIRED SALES TAX IN COMPLIANCE WITH NEW YORK STATE'S DEPARTMENT OF TAXATION.")

Defendant NYCMP "admits that its name was contained on the contract between Plaintiff and the GOALS Defendants." (ECF 147 at 7-8.) But Defendant NYCMP argues that it was

"dormant at all pertinent times and was included as a party to Plaintiff's contract as an error[.]" (Reply at 11.)  Though Defendant NYCMP argues that "[t]he sole element tying Defendant NYCMP to this State is the contract signed by Plaintiff and Defendant NYCMP for a procedure that was performed by a separate entity, Defendant Perkins Medical Care N.J.," that procedure occurred in New Jersey and gave rise to this litigation.  This is sufficient for finding minimum contacts to establish specific jurisdiction.  Moreover, the Court rejects Defendants' argument that the inclusion of NYCMP's name on Plaintiff's contract *over ten times* is a mere "scrivener's error." (*Id.* at 12.)  Defendant NYCMP has directed its activities at New Jersey and "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Asahi Metal Indus. Co. v. Superior Cour of California, Solano Cnty.*, 480 U.S. 102, 109 (1987) (quoting *Burger King*, 471 U.S. at 475).  Defendant NYCMP's motion to dismiss for lack of personal jurisdiction is therefore denied.

### B.  12(b)(6) Motion to Dismiss

#### i.  Count Three (Medical Malpractice)

Defendants argue that Plaintiff's medical malpractice claim must be dismissed because the pleadings fail to indicate "what, exactly, the Defendants failed to do and how any such action was malpractice or proximately caused any injuries."  (ECF 149 at 7.)  Defendant argues that the pleadings indicate that "the surgery itself was without error and successful, and Plaintiff's complaints are for being sexually assaulted by Dr. Driscoll."  (*Id.*)

Plaintiff brings a medical malpractice claim against Defendants Voskin, Perkins, Goals Aesthetics, Goals Solutions, and Perkins Medical.  (SAC ¶¶ 66-69.)  Under New Jersey law, a plaintiff seeking damages for medical malpractice must prove three elements: that "(1) there is an applicable standard of care, (2) a deviation from that standard occurred, and (3) the deviation was

the proximate cause of the harm sustained by the plaintiff." *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 367 (D.N.J. 2013). The Second Amended Complaint alleges that Defendants "owed the Plaintiff a duty to use care and caution in treating Plaintiff; to observe all applicable standards; and to otherwise avoid injuring or attempting to injure Plaintiff." (SAC ¶ 39.) The Second Amended Complaint also alleges that a deviation from that standard of care occurred, and that such a deviation caused Plaintiff's injuries. (*Id.* ¶¶ 68, 69.) Specifically, Plaintiff alleges that Defendants "failed to properly hire, train, and supervise Dr. Driscoll, failed to obtain informed consent, failed to keep proper medical records, failed to properly staff its medical facility, failed to carry required insurance, failed to offer Plaintiff a chaperone, and failed to have and implement proper policies and procedures." (ECF 152 at 7) (*see also* SAC ¶ 68.) Plaintiff also alleges that Defendants were on notice of Dr. Driscoll's past sexual misconduct, and "despite Defendants' own directive that DRISCOLL should not be left alone with female patients," Defendants nevertheless left him alone with Plaintiff in the operating room.[4] (SAC ¶ 68(ee).)

---

[4] In addition to Dr. Driscoll's past misconduct allegations in other states (*see* supra fn. 2), Plaintiff alleges that:

> On or about March 3, 2022, DRISCOLL left a patient on the surgical table in the operating room for an extended time and staff could not locate him; On or about March 23, 2022, DRISCOLL left a patient alone prior to discharge; On or about April 26, 2022, DRISCOLL performed a follow-up procedure on a GOALS staff member where the staff member felt uncomfortable being alone with DRISCOLL, and shortly thereafter, a notice was sent to the surgical supervisor and DRISCOLL that DRISCOLL should never be left alone with a patient without a female employee present; In or about May 2022, DRISCOLL had his phone connected to the Bluetooth speakers in a GOALS operating room and went to the bathroom and while he was in the bathroom, staff hear sexual pornography play from his phone to the Bluetooth speakers for an extended period of time; this was reported by staff to occur multiple times even before this incident in May 2022 but DRISCOLL was not disciplined or fired; In or about May 2022, a female employee or agent of GOALS was sexually harassed by DRISCOLL and reported the incident to management, but again DRISCOLL was not disciplined or terminated; and [a]fter each of these incidents, GOALS did not terminate DRISCOLL from employment.

Defendants also argue that dismissal of Plaintiff's medical malpractice claim is appropriate under Rule 12(b)(6) because Plaintiff has failed to comply with New Jersey's Affidavit of Merit Statute. (ECF 149 at 7) ("Plaintiff's Second Amended Complaint contains absolutely no affidavit of merit whatsoever!") New Jersey law requires that a plaintiff provide the defendant such an affidavit in actions of professional or medical malpractice or negligence. N.J. Stat. Ann. 2A:53A–27. Under state practice, noncompliance with the statute is deemed a failure to state a cause of action. *Id.*, A–29. Plaintiff filed an Affidavit of Merit, signed by Dr. Howard Neil Langstein, when filing her original complaint on April 4, 2024. (*See* ECF 1-1.) The Affidavit states that based on Dr. Langstein's review of the medical records, it "is my opinion, there exists a reasonable probability that the care provided to P.C. by the named Defendants fell outside the scope of accepted professional standards as alleged in P.C.'s complaint." (*Id.* ¶ 3.) The Affidavit also states:

> If any defendant contends that this Affidavit of Merit fails to completely satisfy the requirements of the Affidavit of Merit Statute in any way, demand is hereby made that the defendant immediately notify the plaintiff of any such alleged deficiencies in writing so that same may be corrected if necessary and within the time constraints of NJ.S.A.2A:53A-26, et seq.

(ECF 1-1.) Defendants' argument that no Affidavit of Merit was filed, because it is attached to the original complaint and not the Second Amended Complaint, is unavailing, as are any arguments taking issue with such an Affidavit given the above notice concerning any deficiencies. Accordingly, Defendants' motion to dismiss Count Three is denied.

### ii.    Count Four (Negligent Infliction of Emotional Distress)

New Jersey courts recognize the tort of negligent infliction of emotional distress in the medical malpractice context. *See Giardina v. Bennett*, 545 A.2d 139, 143 (N.J. 1988). Such claims

---

(SAC ¶ 36(h)-(m).)

can be either "direct," in which a person is the direct object of a tortfeasor's negligence and experiences resulting severe emotional distress, or "indirect," in which a person, not otherwise a direct object of the tortfeasor's negligence, experiences severe emotional distress as a "bystander" of the victim's injury. *Kaye v. Nussey*, 670 F. Supp. 3d 149, 157 (D.N.J. 2023). The elements of a direct claim are as follows: the defendant owed the plaintiff a duty of care, the defendant breached that duty, the plaintiff suffered severe emotional distress, and the breach proximately caused that distress. *Moses v. Sood*, No. 20-1025, 2024 WL 5264477, at *4 (D.N.J. Dec. 30, 2024) (citing *Johnson v. City of Hoboken*, 476 N.J. Super. 361, 375-76 (App. Div. 2023)).

As discussed above, Plaintiff has sufficiently alleged that Defendants owed her a duty of care and breached that duty. Plaintiff also alleged that she had to endure "inappropriate sexual conduct, sexual commentary and unwanted sexual touching" during her physician/patient relationship that resulted in "serious emotional distress to Plaintiff beyond what a normal person could be expected to endure." (SAC ¶ 73.) Thus, Plaintiff has sufficiently stated a claim for negligent infliction of emotional distress and Defendants' motion is denied.

### iii. Count Five (Vicarious Liability)

Plaintiff has asserted a vicarious liability claim against Defendants in Count Five. (SAC ¶¶ 73-90.) While the general rule is that "sexual harassment by a supervisor is not conduct within the scope of employment[,] [s]cope of employment does not define the only basis for employer liability under agency principles." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757-58 (1998). "In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment." *Id.* These principles are set out in Section 219(2)

of the Restatement (Second) of Agency.[5]  Specifically, Section 219(2)(d) "concerns vicarious liability for intentional torts committed by an employee when the employee uses apparent authority (the apparent authority standard), or when the employee was aided in accomplishing the tort by the existence of the agency relation." *Id.* at 759 (citation omitted).  "When a party seeks to impose vicarious liability based on an agent's misuse of delegated authority, the Restatement's aided in the agency relation rule, rather than the apparent authority rule, appears to be the appropriate form of analysis." *Id.* at 759-60.

Plaintiff alleges that Defendants are vicariously liable for the acts of Dr. Driscoll under the doctrines of apparent authority and aided-by-agency.  (SAC ¶ 76.)  Under New Jersey law, "a principal is liable for the tortious acts of an agent acting within the scope of his or her authority." *Baldasarre v. Butler*, 625 A.2d. 458, 463 (N.J. 1993).  "An agency relationship can be established through apparent authority." *Jarrah v. Trump Hotels & Casino Resorts, Inc.*, 487 F. Supp. 2d 522, 529 (D.N.J. 2007).  New Jersey courts have recognized that "[a]pparent authority arises in those situations where the principal causes persons with whom the agent deals to reasonably believe that the agent has authority." *Dymburt v. Rao*, 881 F. Supp. 942, 945 (D.N.J. 1995) (citing *Arthur v. St. Peters Hospital*, 405 A.2d 443, 446 (Law Div. 1979)).  "Apparent authority arises when a principal 'acts in such a manner as to convey the impression to a third party that the agent has certain power which he may or may not possess.'" *Jarrah*, 487 F. Supp. 2d at 529 (quoting

---

[5] (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

    (a) the master intended the conduct or the consequences, or

    (b) the master was negligent or reckless, or

    (c) the conduct violated a non-delegable duty of the master, or

    (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

14

*Lampley v. Davis Mach. Corp.*, 530 A.2d 1254, 1259 (N.J. Super. Ct. App. Div. 1987)). "In addition, the 'essential element of reliance' must exist before apparent authority can be found." *Bahrle v. Exxon Corp.*, 652 A.2d 178, 188 (N.J. Super. Ct. App. Div. 1995) (quoting *Wilzig v. Sisselman*, 506 A.2d 1238, 1244 (N.J. Super. Ct. App. Div. 1986)).

In *Arthur v. St. Peters Hospital*, plaintiff sued the hospital and various doctors after an emergency room physician misread his x-ray. 405 A.2d at 444. The hospital claimed that the physicians were independent contractors. *Id*. The Law Division judge applied the doctrine of apparent authority to deny the hospital's motion for summary judgment. *Id.* at 447 ( "it is the opinion of this court that there are facts here which permit the inference that the hospital held these physicians out as its employees.") The *Arthur* court noted "generally people who seek medical help through the emergency room facilities of modern-day hospitals are unaware of the status of the various professionals working there" and that "it is the reputation of the hospital itself upon which he would rely." *Id*. Thus, the court found the patient would assume the physicians were employees of the hospital. *Id*. In contrast, in *Jarrah v. Trump Hotels & Casino Resorts*, the Court determined that Trump Hotels & Casino Resorts was "not a provider of medical services" and thus it "would be unreasonable for a person who gambles at the casino to rely on Trump to provide quality medical service." 487 F. Supp. 2d at 530 (citing *Neal ex rel. Scott v. New Jersey State Dept. of Corrections*, No. A-3885-01T3, 2002 WL 31741497 (N.J. Super. App. Div. Oct. 24, 2002)) (provider of medical personnel to prison was not a hospital; therefore inmates were not relying on its reputation and could not establish apparent authority).

Plaintiff alleges that "[b]y allowing DRISCOLL to represent Defendants' business, Defendants create[d] the impression that its doctors, including DRISCOLL, were Defendants' employees or agents" and that Plaintiff relied on these representations, including (i) that

15

Defendants operated as Goals Aesthetics & Plastic Surgery and by no other name or entity, (ii) only Goals Aesthetics & Plastic Surgery signs appeared throughout the medical facility where the surgery took place, (iii) that staff wore uniforms with the logo for Goals Aesthetics & Plastic Surgery, (iv) that Defendants represented Dr. Driscoll as a surgeon for Goals Aesthetics & Plastic Surgery on social media and on the Goals Aesthetics & Plastic Surgery website, (v) the contract Plaintiff signed with NYCMP and Goals Aesthetics' names, and (vi) by verbal representations from staff members leading up to Plaintiff's surgery.  (SAC ¶¶ 85, 88.)

Like in *Arthur* and unlike in *Jarrah*, it would be reasonable for Plaintiff to have assumed that Dr. Driscoll was an employee of Goals Aesthetics & Plastic Surgery.  Plaintiff's claim also finds support in *Estate of Cordero ex rel. Cordero v. Chris Hospital*, a case relied on by Defendants. (*See* ECF 149 at 12) (citing 958 A.2d 101, 108 (N.J. Super. Ct. App. Div. 2008)).  There, the Court found that Christ Hospital "held out [a] doctor as its agent" (and thus the apparent authority exemption from liability for the conduct of an independent contractor applied), relying on the legal standard that "[w]hen a hospital provides a doctor for a patient under circumstances in which a reasonable patient would believe the service is rendered in [sic] behalf of the hospital, a strong inference arises that a patient who accepts the doctor's care does so in that reasonable belief." 958 A.2d at 108.  The circumstances surrounding Plaintiff's surgery as alleged in her pleadings allow for the inference that Dr. Driscoll was an employee of the Goals Aesthetics & Plastic Surgery medical office, and accordingly Plaintiff's claim survive at this stage under the doctrine of apparent authority.[6]  Defendants' motion to dismiss Count Five is denied.

---

[6] Because the Court has found that the apparent authority exemption to vicarious liability is applicable here, the Court need not address the parties' aided-by-agency arguments.

### iv. Count Six: (Negligent Hiring, Retention, and Supervision)

Plaintiff alleges in Count Six that Defendants "failed to exercise reasonable care in hiring, supervising and retaining DRISCOL, when they knew or should have reasonably known [about] DRISCOLL's unfitness, incompetence, or dangerous attributed." (SAC ¶ 96.) In general, "when a person engages an independent contractor to do work that is not itself a nuisance, he is not vicariously liable for the negligent acts of the contractor in the performance of the contract." *Puckrein v. ATI Transp., Inc.*, 897 A.2d 1034, 1041 (2006). To that general rule of non-liability, however, there are two relevant exceptions: (1) where the principal retains control of the manner and means of doing the work subject to the contract; and (2) where the principal engages an incompetent contractor. *Maran v. Victoria's Secret Stores*, LLC, 417 F. Supp. 3d 510, 529 (D.N.J. 2019) (citing *Majestic Realty Assocs. v. Toti Contracting Co.*, 153 A.2d 321, 324 (N.J. 1959)). For the second exception of hiring an incompetent contractor, "a plaintiff must show that the contractor was, in fact, incompetent or unskilled to perform the job for which he/she was hired, that the harm that resulted arose out of that incompetence, and that the principal knew or should have known of the incompetence." *Puckrein*, 897 A.2d at 1042. Importantly, the "selection of a competent contractor who negligently causes injury, does not render a [principal] liable" because there is "[n]o presumption as to the negligence of an employer in hiring an independent contractor" from negligence in the performance of his duties or injuries that take place "after being hired[.]" *Mavrikidis v. Petullo*, 707 A.2d 977, 986 (N.J. 1998).

Under New Jersey law, the tort of negligent hiring, supervision, and retention requires the satisfaction of two elements. *See Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 369 (D.N.J. 2013), amended, No. 11-740, 2013 WL 12152481 (D.N.J. Oct. 16, 2013). First, the plaintiff must demonstrate that the employer "knew or had reason to know of the particular

17

unfitness, incompetence or dangerous attributes of the employee and could reasonably have foreseen that such qualities created a risk of harm to other persons." *Di Cosala v. Kay*, 450 A.2d 508, 516 (N.J. 1982). Second, the plaintiff must show that as a result of the employer's negligent hiring and supervision, the employee's "incompetence, unfitness or dangerous characteristics" were the proximate cause of the plaintiff's injuries. *Id*.

Plaintiff argues that "Defendants hired, supervised, and retained Dr. Driscoll despite his multiple past licensing suspensions (in at least two states) and multiple past sexual misconduct incidents in the workplace with female patients." (ECF 152 at 12.) Plaintiffs also point the fact that "Defendants even found Dr. Driscoll playing pornography in the surgical room during prior surgeries, but retained him nevertheless." (*Id.* at 12-13.) Finally, Plaintiff argues that her injuries were caused by Defendants' failure to properly hire and supervise Dr. Driscoll. (*Id.* at 13.) Therefore, Plaintiff has sufficiently pleaded the elements of negligent hiring, retention, and supervision, because based on these allegations, Defendants certainly at minimum had reason to know of Dr. Driscoll's unfitness given his past transgressions in other states as well as in their facilities, and that they reasonably could have foreseen that these qualities created a risk to patients.

Plaintiff has also sufficiently alleged past complaints or evidence of incompetence, including a documented history of medical license suspensions in Texas and California, *see* supra fn. 2, and reports of misconduct in prior surgeries and patient interactions at Defendants' facilities (*see* SAC ¶ 36). *C.f. Maran*, 417 F. Supp. 3d at 530 ("The record contains no serious complaints or evidence of incompetence… [Plaintiff] relied here on just two negative reports" in prior work history as a DJ, including once instance of showing up late and one of forgetting a power cord for his iPod). Thus, the exception of engaging an incompetent contractor applies, and Plaintiff's cause

claim can move forward past the motion to dismiss stage.  Defendants' motion to dismiss Count Six is denied.

### v.  Count Seven (NJCFA)

Plaintiff alleges in Count Seven that Defendants violated New Jersey's Consumer Fraud Act ("NJCFA"), *see* N.J. Stat. Ann. § 56:8-1 et seq., by engaging in deception, fraud, false pretense, false promises and representations and unconscionable business practices.  (SAC ¶ 102.) Specifically, Plaintiff alleges that Defendants represented to her and the public that Goals Aesthetics & Plastic Surgery's surgeons were "double if not triple board-certified plastic surgeons" and that "patient safety is a top priority" in their practice, even though Dr. Driscoll "was not double or triple board certified and has his license suspended in other states[.]" (*Id.* ¶¶ 103, 104.) Defendants argue that Plaintiff's NJCFA claim should be dismissed because it is not pleaded with particularity, the NJCFA does not apply to medical doctor advertising, and the claim is based on mere puffery.  (ECF 149 at 3-7.)

To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff.  *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–465 (N.J. 1994)).  However, "learned professionals" who render services to the public are "beyond the reach of the [CFA] so long as they are operating in their professional capacities." *Macedo v. Dello Russo*, 840 A.2d 238, 242 (N.J. 2004); *see also DiCarlo v. St. Mary Hosp.*, 530 F.3d 255, 267 (3d Cir. 2008) ("New Jersey courts have consistently held that professionals are not covered by the Consumer Fraud Act.")  Indeed, it is well-established that "advertisements by learned professionals in respect of the rendering of professional services are insulated from the CFA." *Macedo*, 840 A.2d at 242.  "The rationale underlying the learned professionals exception is that

19

uniform regulation of an occupation, where such regulation exists, could conflict with regulation under the CFA." *Lee v. First Union Nat. Bank*, 971 A.2d 1054, 1062 (N.J. 2009). Moreover, "the exception extends to matters 'affecting' professional services." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *23 (D.N.J. Dec. 16, 2021) (citation omitted). This includes activities such as billing and advertising. *See Macedo*, 840 A.2d at 241-42 (advertising); *DiCarlo*, 530 F.3d at 267-68 (billing). "Those who have been exempted from NJCFA claims include physicians, lawyers, dentists, accountants, and engineers." *Riad v. Dey Equine Veterinarians, P.A.*, No. 22-6927, 2023 WL 7648714, at *9 (D.N.J. Nov. 15, 2023).

Though Plaintiff argues that *Macedo* does not preclude consumer fraud claims "against the corporate Defendants, who are not individual professionals" (ECF 152 at 5), this argument is contrary to prevailing law, and it implicitly concedes that Plaintiff's NJCFA claim is not viable against the individual Defendants Dr. Voskin nor Dr. Perkins. "Medical diagnostic providers qualify as "learned professionals" eligible for the exemption." *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *23 (citing *Leslie v. Quest Diagnostics, Inc.*, No. 17-1590, 2019 WL 4668140, at *4 (D.N.J. Sept. 25, 2019) ("Quest ... qualifies as a learned professional covered by other state regulation rendering a claim under the New Jersey or North Carolina consumer protection statutes incognizable.")). In *Emerson v. Andover Subacute Rehab. Ctr. I*, the Honorable Julien Neals dismissed plaintiff's NJCFA claim against a nursing home facility under the learned professionals exception. No. 20-20066, 2025 WL 3089804, at *9 (D.N.J. Nov. 5, 2025) ("To start, in New Jersey, the learned professionals exception *does* encompass nursing homes.") (emphasis in original). The corporate Defendants here are medical offices and professionals that provide medical services and thus qualify as learned professionals for the purposes of the NJCFA

exemption.  *See DiCarlo*, 530 F.3d at 268 (affirming dismissal of NJCFA claim against defendants St. Mary Hospital, Bon Secours New Jersey Health System, Inc., and Bon Secours Health System, Inc. under learned professionals exception).

The cases that Plaintiff cites for support are inapposite, since they apply to NJCFA claims where the defendant-professionals were sued regarding fraudulent activities outside their professional class.  (*See* ECF 152 at 6) (*See Gilmore v. Berg*, 761 F. Supp. 358, 375–76 (D.N.J. 1991) (lawyer and accountant were answerable under CFA for efforts to sell real estate); *Blatterfein v. Larken Associates*, 732 A.2d 555 (App. Div. 1999) (false representations by an architect performing marketing services was covered by CFA).)

Accordingly, Plaintiff's NJCFA claim against all Defendants is barred by the learned professionals exception is dismissed with prejudice.  *In re Am. Med. Collection Agency*, 2021 WL 5937742, at *23 ("Plaintiffs' NJCFA [] claim[] against LabCorp and Quest are barred and dismissed with prejudice.").

### C.  Motion to Compel Arbitration

Finally, Defendants argue that in the alternative, the Court should refer this matter to arbitration pursuant to the Federal Arbitration Act ("FAA") in accordance with the contract executed between Plaintiff and Defendant NYCMP.  (ECF 147 at 12; ECF 148 at 12; ECF 149 at 15.)  In 2022, the FAA was amended by the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act ("EFAA") as follows:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute,...no predispute arbitration agreement ... shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or sexual harassment dispute.

21

9 U.S.C. § 402(a). This language has been interpreted broadly. In *Johnson v. Everyrealm, Inc.*, the Honorable Paul Engelmayer held that where a case includes both sexual harassment claims and other related claims, the EFAA bars arbitration of the entire case, not merely the harassment counts. 657 F. Supp. 3d 535, 540 (S.D.N.Y. 2023) ("the Court construes the EFAA to render an arbitration clause unenforceable as to the entire case involving a viably pled sexual harassment dispute, as opposed to merely the claims in the case that pertain to the alleged sexual harassment.") Judge Engelmayer concluded the statutory text is "clear, unambiguous, and decisive" because it renders a pre-dispute arbitration agreement unenforceable "with respect to a *case* which is filed under Federal, Tribal, or State law and relates to the ... sexual harassment dispute." *Id.* at 558 (emphasis in original) (quoting 9 U.S.C. § 402(a)). The ordinary meaning of "case," the court explained, refers to an "undivided whole" that "does not differentiate among causes of action within it." *Id.* at 558-59 (quoting Black's Law Dictionary (11th ed. 2019)).

Courts in this Circuit have adopted Judge Engelmayer's reasoning in *Johnson*. *See, e.g.*, *Michael v. Bravo Brio Restaurants LLC*, No. CV 23-3691, 2024 WL 2923591, at *6 (D.N.J. June 10, 2024) (dismissing Defendant's motion to compel arbitration where Plaintiff alleged a hostile work environment claim that implicates the EFAA "rendering the otherwise valid arbitration agreement unenforceable); *Sheehan v. Everstory Partners*, 804 F. Supp. 3d 498, 518 (E.D. Pa. 2025) ("Plaintiffs' Arbitration Agreements are … invalid and unenforceable with respect to the entire case asserted in the Amended Complaint.") Last month, the Sixth Circuit also adopted this interpretation of the EFAA. *See Bruce v. Adams & Reese, LLP*, No. 25-5210, 2026 WL 523180, at *9 (6th Cir. Feb. 25, 2026) ("[T]he EFAA's text renders an arbitration agreement '[un]enforceable with respect to' a plaintiff's entire case, or action, and not only with respect to certain claims therein.").

The Court rejects Defendants' argument that "[t]he EFAA is plainly inapplicable" because "Plaintiff has failed to plead a claim for sexual harassment and/or assault" and that her claims against the moving Defendants (who do not include Dr. Driscoll) sound in "entirely separate, distinct bodies of law" such as medical malpractice, negligent hiring, negligent infliction of emotional distress, and violations of the Consumer Fraud Act. (ECF 155 at 16.) The pleadings in the Second Amended Complaint explicitly include allegations of sexual harassment and assault. (*See e.g.*, SAC ¶¶ 28) ("DRISCOLL committed medical malpractice and willfully and maliciously sexually harassed, sought, and solicited sexual contact with Plaintiff, and engaged in non-consensual sexual contact with Plaintiff"). Moreover, in accordance with the statutory text of the EFAA, this is "a case which is filed under Federal, Tribal, or State law and *relates* to the sexual assault dispute or the sexual harassment dispute." 9 U.S.C. § 402(a) (emphasis added).

Accordingly, Defendants' motion in the alternative to compel arbitration is denied. *See Mitura v. Finco Servs.*, No. 23-2879, 2024 WL 232323, at *5 (S.D.N.Y. Jan. 22, 2024) (denying motion to compel arbitration because the "allegations plausibly state a claim that relates to sexual harassment as required by the EFAA.")

## VI.    CONCLUSION

For the foregoing reasons, Defendant Ella Voskin's motion to dismiss (ECF 148) is **GRANTED** and all claims against her are dismissed without prejudice. Defendant NYCMP's motion to dismiss (ECF 147) is **DENIED**. Defendants' motion to dismiss (ECF 149) is **GRANTED** in part and **DENIED** in part; Count Seven of the Second Amended Complaint is **DISMISSED** with prejudice, and all remaining claims survive at this stage of litigation. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    Jose R. Almonte, U.S.M.J.
       Parties

24